(81 Misc. Rep. 48.)

C. T. WILLARD CO. v. CITY OF NEW YORK et al.

(Supreme Court, Special Term, New York County. March 25, 1913.)

1. MUNICIPAL CORPORATIONS (§ 373*) — PUBLIC IMPROVEMENTS—LIENS—SEPARATE CONTRACTS.

Liens against one contract for a public improvement cannot be paid out of moneys arising from another contract.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. § 373.*]

2. MUNICIPAL CORPORATIONS (§ 373*)—PUBLIC IMPROVEMENTS—LIENS.

A bank contracted to finance the performance of certain contracts for public improvements, receiving assignments of moneys to be paid thereon, and credited the proceeds of the several improvements in a single account against advancements made. Materialmen, having furnished materials for one or the other of the improvements, claimed liens on the balance in the hands of the bank. *Held*, that a determination of what particular fund produced the balance, and whether any part thereof was applicable to any of the liens, could not be had before all the claimants to the funds were made parties.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. § 373.*]

Action by the C. T. Willard Company against the City of New York and others to foreclose liens under public improvement contracts. Decision suspended for want of proper parties.

See, also, 142 N. Y. Supp. 11.

Cushing & Cushing, of New York City, for plaintiff.

Douglas, Armitage & McCann, Archibald R. Watson, Corp. Counsel, Eugene L. Bushe, John C. Wait, Alexander, Watriss & Polk, and Elmer G. Story, all of New York City, Wm. F. Hagarty and Maurice V. Theall, both of Brooklyn, Wm. H. Stayton and Geo. A. Voss, both of New York City, Wm. A. Fisher, of Brooklyn, and Chas. A. Winter, Franklin P. Trautmann, Ward, Haden & Satterlee, and Gino C. Speranza, all of New York City, for defendants.

GIEGERICH, J. The action is to foreclose a lien claimed to have been acquired under a contract in writing dated on or about August 27, 1909, for a public improvement, entered into by the Robertson & Gerehart Contracting Company with the city of New York for the regulating, grading, and paving with macadam pavement Bay Ridge Parkway (extension of Shore Road), between Fourth avenue and Ft. Hamilton avenue, in the borough of Brooklyn, city and state of New York. The said Robertson & Gerehart Contracting Company also entered into other contracts with the city which are designated in the evidence and briefs as "Purification Plant" and "Sixty-Seventh Street" contracts. Another contract was entered into relative to work on Bay Ridge avenue, which was considered as part of the contract which is the subject of this action. The evidence shows that the Ridgewood National Bank agreed to finance the contractor in its said contracts, and that the latter, on or about September 23, 1909, by an instrument in writing, assigned to the said bank all moneys due or to grow due under the contract in suit, and assignments were also made by the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

contractor to the bank of moneys due or to grow due under other contracts made by it with the city of New York. . Thereafter numerous liens were filed with the comptroller and the park board of the city of New York for materials and labor furnished upon the public improvement in controversy. Among others who filed liens and took part in the trial of this action are the following, with the date of filing and the amount of their liens set opposite their names, viz.: The Contractors' Supply Company, September 7, 1910, $1,394.59; Henry Steers, Incorporated, November 12, 1910, $3,356.25; plaintiff (the C. T. Willard Company), November 29, 1910, $1,767.88. The said contractor, Robertson & Gerehart Contracting Company, was adjudicated a bankrupt in the United States District Court for the Eastern District of New York on or about December 22, 1910. The bank bonded the said liens, and moneys were paid by the city on the contracts so assigned upon the giving of indemnity bonds to the city.

The bank claims that it loaned and advanced to the contractor various sums of money, amounting in the aggregate to $108,754.06, and that there should be added to the amount due to the bank the following items, viz.: Interest, $1,499.68; premiums paid on bonds to discharge liens, $388.49; additional premiums paid on indemnity bonds, $128; attorney's fees for services rendered in connection with the giving of bonds, $200; total, $2,216.17. This last-mentioned sum, added to the sum of $108,754.06, brings the total of the bank's claim up to the sum of $110,970.23. The bank received the following sums from the following sources, namely: Bay Ridge (A) $68,067.59; Bay Ridge (B), $1,452.29 ($69,519.88); purification plant, $11,687.26; Sixty-Seventh Street, $11,143.45; other work, $24,903.74; total, $117,-254.23. Subtracting the total of the bank's alleged offsets, $110,970.-23, leaves a net balance of $6,284 over and above all loans and advances made by the bank to the contractor, exclusive of charges for interest, premiums on bonds, and attorney's fees.

It is claimed on behalf of some of the lienors that the bank is not entitled to reimbursement for premiums paid on bonds, nor should they be allowed anything for attorney's fees claimed to have been incurred. It is further claimed in their behalf that the bank should be charged with the interest on the balance in its hands, which claim is disputed by the bank. It is claimed on behalf of the lienors that the balance in the hands of the bank is applicable to the payment of their liens which are embraced in this action, because the last two payments came out of the contract in suit, as follows: March 8, 1911, $11,430.-22; April 25, 1911, $11,591.77; total, $23,021.99. The learned counsel for the bank and surety company, adverting to such final payments on the Bay Ridge contracts, urges that it does not follow from the "mere sequence of contributions to the pot that the dregs of the entire mixture are attributable to one ingredient rather than to another."

The previous payments were $11,687.50 on the purification plant contract and $11,143.35 on the Sixty-Seventh Street contract, making a total of $22,830.61, which the bank claims was received for the purpose of finishing the contract which is the subject of this action and to earn the said final payments on it, which overcame the deficit that

existed until the last payment was made. The cashier of the bank testified that the moneys from five different sources went into the account of the contractor and were thus intermingled and lost their identity; that there were no directions given to the bank by the contractor as to applying any payment to any particular debts; that the agreement was that the bank should finance the contractor; that all the assignments stood as general security; that the method adopted was by the discount of notes or by advances; that the notes were to bear the name of P. Ryan, either as maker or indorser, but that the proceeds of the notes or the advances made went into the bank account of the contractor and were subject at all times to check in the usual course; that checks were drawn against the general account by the contractor, but the bank had no means of knowing whether the money went into one contract or another, or, in fact, into any contract; that the moneys received were applied to the indebtedness of the contractor; and that he (the cashier) could not tell, nor would an examination of the books disclose, to what particular contract the balance in the hands of the bank belongs.

[1] It appears from the evidence that liens for substantial sums have been filed against the moneys due on the purification plant contract, that suits have been brought to foreclose such liens, and that the parties to such other actions are not parties to the present action. They would not, therefore, be bound by any adjudication in this action. Liens against one contract cannot be paid out of moneys arising from another contract (Quinlan v. Russell, 94 N. Y. 350), and it is therefore necessary to determine what fund produced the balance in the hands of the bank, and whether any part of such balance is applicable to any of the liens which are the subject of this action.

[2] From what has been said it is apparent that this question is not free from doubt, and, in view of this, justice demands that its solution should not be attempted until all parties claiming an interest in the fund are brought in as parties litigant. As already seen, all such parties are not before the court, and since a complete determination of the controversy cannot be had without them, I may of my own motion direct that they be brought in. Cook v. Lake, 50 App. Div. 92, 94, 95, 63 N. Y. Supp. 818; City Equity Co. v. Elm Park Realty Co., 135 App. Div. 856, 120 N. Y. Supp. 437.

Before making a definite disposition of the matter I wish to see counsel, and will appoint the 29th day of March, 1912, at the opening of the court at Trial Term, Part IV, as the time and place of such further hearing.